GARRY L. and LOUISE E. PETERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Peters v. Commissioner
Docket No. 9920-77.
United States Tax Court
T.C. Memo 1978-219; 1978 Tax Ct. Memo LEXIS 293; 37 T.C.M. (CCH) 941; T.C.M. (RIA) 78219; June 12, 1978, Filed *293 Held, the Commissioner failed to carry his burden of proving that the petitioners executed consents extending the statute of limitations in this case. Charles L. Abrahams, for the petitioners. Arthur A. Oshiro, for the respondent. SIMPSON
MEMORANDUM OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $ 3,502.00 in the petitioners' Federal income tax for 1972. The only issue *294 for decision is whether the Commissioner has carried his burden of proving that the petitioners executed consents extending the statute of limitations in this case. Some of the facts were stipulated, and those facts are so found. The petitioners, Garry L. and Louise E. Peters, maintained their legal residence in Canada at the time of the filing of the petition in this case. They filed a joint Federal income tax return for 1972 with the Internal Revenue Service Center, Andover, Mass. Such return was mailed to such service center on June 23, 1973, and was received by it on June 26, 1973. The petitioners do not claim and there is no record of any extension of time for filing such return. On June 24, 1977, the notice of deficiency was mailed to them from the Los Angeles, Calif., office of the Internal Revenue Service. The copy of the notice which was offered and admitted at the hearing was sent to: Mr. Garry L. Peters and Mrs. Louise E. Peters c/o Thomas L. Fox, CPA 601 Midtown Plaza Syracuse, New York, 13210 However, each party attached a copy of the notice to his pleadings, and those copies were sent to: Mr. Garry L. Peters and Mrs. Louise E. Peters 3020 Eastview Saskatoon, *295 Saskatchewan Canada In 1976, Karen Diane Polley was a "1254 suspense clerk" in the Los Angeles office of IRS. It is the responsibility of such clerk to maintain the records relating to the tax investigations which are held in suspense. Several months before the running of the statute of limitations for making an assessment in a case, such clerk sends two copies of form 872 to the taxpayer or to his attorney when there is a properly executed power of attorney filed in the case. The taxpayer or his attorney is requested to agree to an extension of the statute of limitations and requested to sign and return such forms. When the forms are returned, the clerk examines them to assure herself that they have been properly executed. If she is satisfied, she submits them to her reviewer, who also examines the files to determine whether the forms have been properly executed by the proper person. If the reviewer is satisfied, she initials the forms and submits them to the chief of the section, or the chief of audit, who executes them on behalf of the Commissioner. After the forms have been so executed, they are returned to the suspense clerk, who then makes an entry in her records showing *296 the extended time for making an assessment in the case. Charles L. Abrahams filed a power of attorney on behalf of the petitioners with the Los Angeles office of the IRS on May 7, 1974. Miss Polley remembers receiving forms 872 executed by Mr. Abrahams on behalf of the petitioners and extending the period of assessment in this case through June 30, 1977. She made an entry on the control card showing the extended date. She is confident that she made such entry only after the forms had also been executed on behalf of the Commissioner. However, subsequently, she discovered that such forms were no longer in the file, and she believes that she mistakenly sent both copies back to Mr. Abrahams. When she discovered that the forms were missing, she reported such fact to her reviewer, who then reported the situation to the section chief. The reviewer contemporaneously made a memorandum for the file setting forth the facts as she then understood them.She had no independent recollection of having seen and approved the forms in this case, but she relied upon the statement of Miss Polley as to what had happened to the forms. A copy of Miss Polley's statement was attached to the memorandum *297 of the reviewer, but at the time of the hearing, Miss Polley's statement was also missing. According to the memorandum of the reviewer, the section chief stated "that if we could unequivocally state that we received the 872 and it was mailed back after executing by both taxpayer and government and taxpayer executed the next form 872, the statute may still be protected." Mr. Abrahams is sure that he never executed any forms 872 on behalf of the petitioners and that he never received and transmitted any such forms to them for their execution. At the hearing, he produced a letter dated February 17, 1976, which he received from the IRS and which transmitted forms 872 for him to execute on behalf of the petitioners. He also produced two forms 872 proposing to extend the period through June 30, 1977, which were not executed and which he said were the only forms that he ever received regarding the petitioners. At the hearing, another form 872 was found in the file of the IRS. It proposed to extend the period through December 31, 1978, and was addressed to the petitioners "c/o Viasner & Jacobs, 89 State Street, Boston, Ma. 02109," was not dated, was not executed on behalf of the petitioners, *298 and was stamped "received Apr 28 1977 review staff." The petitioners made a motion for a judgment that the statute of limitations had run at the time the Commissioner sent the notice of deficiency in 1977 and that, therefore, the petitioners are not liable for a deficiency in this case.As a general rule, section 6501(a) of the Internal Revenue Code of 1954[1] provides in part: (a) General Rule.--* * * the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. The petitioners have the burden of proving when the return was filed, when such period of limitations expired, and that no notice of deficiency was properly sent to them within such period. United States v. Gurley,415 F. 2d 144 (5th Cir. 1969); Robinson v. Commissioner,57 T.C. 735 (1972). In this case, *299 such facts are not in dispute: It is agreed that the petitioners' return for 1972 was filed not later than June 26, 1973. [2] Thus, the period of limitations expired not later than June 26, 1976, unless some exception is applicable. Finally, it is admitted by the Commissioner that no notice of deficiency was sent to the petitioners within such period. The Commissioner made a motion for a judgment that the statute of limitations had not run because there were duly executed consents extending such period. He relies on section 6501(c)(4), which provides in part: (4) Extension by agreement.--Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, * * * both the Secretary *300 and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. When the Commissioner relies on such an exception to the general rule, he bears the burden of pleading and proving that the exception is applicable. Bonwit Teller & Co. v. Commissioner, 10 B.T.A. 1300 (1928); Farmers Feed Co. v. Commissioner, 10 B.T.A. 1069 (1928). Although the executed forms are missing, he can carry such burden by secondary evidence showing that the forms were properly executed. Eclipse Lawn Mower Co. v. United States, 1 F. Supp. 768 (Ct. Cl. 1932); Marquis v. United States, 348 F. Supp. 987 (C.D. Cal. 1972), affd. in an unreported opinion (9th Cir., May 15, 1974). Here, he has offered such secondary evidence, and we must decide whether he has carried his burden of proving as a factual matter that the consents were properly executed. To carry his burden of proof, the Commissioner presented *301 the testimony of Miss Polley and her reviewer, the control card showing the entry made by Miss Polley, and the memorandum for the file prepared by the reviewer. Miss Polley testified under oath that she unequivocally remembered receiving the duly executed forms from Mr. Abrahams.She also testified that she made the entry on the card and that in accordance with established procedures, such entry would not have been made unless properly executed consents were then in the file. The reviewer's testimony corroborated Miss Polley's testimony as to the usual procedures; but the reviewer had no direct recollection of having seen the forms or having acted upon them, and her testimony and her statements in the memorandum as to what happened to the forms were based on what Miss Polley told her. In summary, we have the testimony of Miss Polley that the forms were executed, and her testimony is corroborated by the entry on the card, which appears to have been made in due course. Yet, other evidence of record shows disturbing irregularities in the handling of this case by the IRS. Not only are the alleged consents missing from the file, but also Miss Polley's memorandum for the file is now *302 missing. In addition, the copy of the notice of deficiency which was offered at the hearing and which both parties agreed was a true copy of the notice of deficiency was sent to the petitioners in care of an accounting firm in Syracuse, N.Y., which was never authorized to represent the petitioners at the time of these proceedings so far as the evidence indicates; but the copies of the notice of deficiency attached by the parties to their pleadings were both sent to the petitioners at a Canadian address. Also, the file contained an unexecuted consent which had been sent in 1977 to the petitioners in care of an accounting firm in Boston, Mass., proposing to extend the period through December 31, 1978. These irregularities show surprising carelessness in the processing of this file and cause us to wonder how much we can rely upon the claim that the entry in the record was made in due course. On behalf of the petitioners, Mr. Abrahams took the stand as a witness and testified unequivocally that he had not executed any consents on behalf of the petitioners and that, so far as he was aware, none had been presented to the petitioners for their execution. Mr. Abrahams is an attorney *303 and a member of the bar of this Court, and although the pleadings prepared by him in this case show some lack of care and concern for accuracy, we assume that he would not have given the unequivocal testimony without careful consideration and that such testimony must be given great weight. In addition, Mr. Abrahams' testimony is corroborated by the unexecuted consents and the transmittal letter which he produced at the hearing. The Commissioner suggested that those unexecuted forms were a second set sent by Miss Polley after she discovered that the earlier ones were missing, but we are not convinced by that suggestion. The reviewer's memorandum, which was dated September 30, 1976, does not indicate that a second set of consents was to be sent at that time; the reference to the taxpayer executing the "next form 872" may refer merely to the possibility that the petitioners would later execute forms extending the period to an even later date. In addition, we have the unexecuted consents which appear to have been sent to the petitioners in 1977 in care of the Boston accounting firm. Also when the petitioners filed their memorandum brief in this case, they filed an affidavit by Mr. *304 Abrahams stating that he had found a second set of unexecuted consents in his office and attached such consents. Those consents appear to have been sent to him in 1977 proposing to extend the period to December 31, 1978. He offered them for the purpose of showing that they were the second set of consents referred to by Miss Polley, but their production also casts some doubt on his testimony that the unexecuted consents which he offered at the hearing were the only ones in his office. After analyzing and evaluating all this evidence, we find that the evidence on both sides is in relative balance or equipoise. Since the Commissioner has the burden of proving that consents were properly executed, we, therefore, hold that he has failed to carry such burden, and that the statute of limitations had run on the assessment of a deficiency at the time of the sending of the notice of deficiency in 1977. An appropriate order and decision for the petitioners will be entered. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year at issue.↩
2. The petitioners claim that the period of limitations commenced to run when their return was mailed to the IRS on June 23, 1973. However, the Commissioner correctly points out that since such return was not mailed timely, sec. 7502 is not applicable and that, therefore, the holding of Hotel Equities Corp. v. Commissioner, 65 T.C. 528 (1975), affd. 546 F. 2d 725↩ (7th Cir. 1976), is not applicable in this situation.